UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kathy Davison,

           Plaintiff,

v.

City of Minneapolis and Rocco Forte,

           Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 04-3399 ADM/JSM

___

Heidi R. Burakiewicz, Esq., Woodley & McGillivary, Washington, D.C., and Ann E. Walther, Esq., Rice, Michels & Walther, LLP, Minneapolis, MN, appeared for and on behalf of Plaintiff.

Joel M. Fussy, Esq., Assistant City Attorney, Minneapolis, MN, appeared for and on behalf of Defendants.

___

## I. INTRODUCTION

On December 30, 2005, oral argument before the undersigned United States District Judge was heard on Defendants City of Minneapolis ("Minneapolis") and Rocco Forte's ("Forte") (collectively, "Defendants") Motion for Summary Judgment [Docket No. 18]. Plaintiff Kathy Davison ("Davison" or "Plaintiff") alleges Defendants violated her First Amendment freedom of association and freedom of speech rights. Following oral argument, the parties requested additional briefing to address evidence discovered after oral argument [Docket Nos. 35, 37]. The Court did not take the matter under advisement until March 1, 2006, when all briefing was completed [Docket No. 38].

Plaintiff has failed to proffer sufficient evidence to support her allegations. Defendants' Motion for Summary Judgment is granted.

## II.  BACKGROUND[1]

Plaintiff Davison has been a fire fighter with the City of Minneapolis Fire Department ("Fire Department") since 1986.  Davison Decl. (Burakiewicz Aff. [Docket No. 30] Ex. A ) ¶ 1.  In 1999, Plaintiff was promoted to the rank of Captain.  Id.  Plaintiff has been a member of the International Association of Fire Fighters Local 82 (the "Union") throughout her employment as a fire fighter.  Id. ¶ 2.  Over 99% of the members of the Fire Department belong to the Union.  Thornberg Dep. (Fussy Aff. [Docket No. 21] Ex. H) at 7.

**A.   Plaintiff's Union Activities**

In the fall of 2002, Plaintiff began actively opposing Defendant Forte's proposal to close two ladder companies, which necessarily entailed the laying off of fire fighters.  Davison Decl. ¶ 3.  In October 2002, Plaintiff was appointed head of the Union's Committee to Oppose the Closing of Ladders 7 and 8.  Id. ¶ 6.  Throughout that fall, Plaintiff attended a number of public meetings at which Forte was also present.  Id. ¶¶ 4, 7, 8.  At these meetings, Plaintiff spoke in opposition to the proposed cuts.  Id.  Additionally, at one of the meetings, Plaintiff contradicted Forte's assertion that he would station Hennepin County ambulances where the ladder trucks had been stationed, arguing that Forte did not have the authority to do so.  Id. ¶ 7.

Following one of the meetings at which both Plaintiff and Forte spoke, Forte approached Tom Thornberg ("Thornberg"), the Union President, and told Thornberg that he:

> . . . was upset with the Union, and in particular Captain Davison, for our position against the ladder closures and layoffs.  For example, shortly after one of the public neighborhood meetings that took place during the Fall 2002, Chief Forte approached me and stated: "You really needed to get control of your board.  Kathy [Plaintiff] and Josh

---

[1] For purposes of the instant Motion, the facts are viewed in the light most favorable to Plaintiff, the nonmovant.  See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

> [Plaintiff's son] were at a neighborhood meeting" . . . . Chief Forte was visibly upset regarding the comments Captain Davison made at the meeting when he made this statement to me.

Thornberg Decl. (Burakiewicz Aff. Ex. 3) ¶ 6. Plaintiff also alleges that Battalion Chief Pete Malioski informed her that Forte stated that he did not like Fire Department employees speaking out against his proposal. Davison Decl. ¶ 5.

In addition to speaking at public meetings, Plaintiff organized the distribution of flyers criticizing Forte's plan to close the ladder companies. Davison Decl. ¶ 6. Furthermore, a local television news station interviewed Plaintiff in regard to her efforts to quash Forte's proposal. Id. Additionally, Minnesota Public Radio interviewed Plaintiff regarding the proposed layoffs. Id. ¶ 14.

**B.    Fire Investigator Hires**

The City of Minneapolis Fire Department maintains positions for four active fire investigators. Clack Dep. (Fussy Aff. Ex. C) at 101. In 2002 and 2003, three of the four fire investigators retired, resulting in positions for three new fire investigators. Id. at 101-02. The process for hiring fire investigators began with the Minneapolis Human Resources Department developing a ranked list of eligible candidates. Fussy Aff. Ex. T. The candidates took a pass/fail written examination administered by Hennepin County Technical College. Clack Dep. at 59; Fussy Aff. Ex. T. Those who passed were administered a second practical exam. Clack Dep. at 61; Fussy Aff. Ex. S. From this practical exam, a final score was determined, with 90% of the final score coming from the practical exam and 10% from seniority. Fussy Aff. Ex. L. The final score determined the candidates for the position of fire investigator based on the "Rule of Three" certification. Fussy Aff. Exs. S, T. The Rule of Three certification states that a number of

names of eligible candidates be forwarded from the Human Resources Department to the requesting agency equal to the amount of openings plus two additional names. Thus, a single opening yields three candidates. The head of the relevant department may then choose any of the three candidates, regardless of their final score. Clack Dep. at 67-69; Fussy Aff. Ex. T.

Forte's practice as Chief of the Fire Department was to have three Fire Department members form an interview panel when selecting a candidate for hire. Fussy Aff. Ex. O. Forte did not attend the interviews, but a representative from the Union was present in an ex officio capacity. Fussy Aff. Ex. U. Forte, on most all occasions, hired the individual who scored highest on the interview, regardless of the final score rankings previously generated by the Human Resource Department. Forte Dep. (Fussy Aff. Ex. B) at 324-25. An exception to this practice occurred in 1999 when Forte selected the individual ranked 24 for one of 23 positions of fire captain. Fussy Aff. II [Docket No. 40] Ex. BB.

When the first fire investigator position opened near the end of 2002, Plaintiff, Jennifer Cornell ("Cornell"), and Tim Thomas ("Thomas") were selected as the three candidates for Forte's consideration. Fussy Aff. Ex. O. The three candidates were interviewed on January 9, 2003. The interviews were conducted by Assistant Chiefs Ulysses Seal and James Clack, as well as Human Resources Generalist Lasamy Mila.[2] Fussy Aff. Exs. O. None of the interviewers were aware that Plaintiff headed the Union committee opposed to the closing of the ladder companies. Clack Dep. at 342; Mila Dep. (Fussy Aff. Ex. G) at 103; Seal Dep. (Fussy Aff. Ex. E) at 161. Additionally, either Thornberg or Thomas Griffin were present at each interview as

---

[2] In the November 2003 interview, Clack was replaced by Deputy Chief Dave DeWall. Fussy Aff. Ex. O. DeWall testified that he holds Plaintiff in a high professional and personal regard. DeWall Dep. (Burakiewicz Aff. Ex. 16) at 89-97.

4

the Union representative. No objection was raised to the process, format, questions, or scoring of the interviews. Thornberg Dep. at 18, 23-24; Griffin Dep. (Fussy Aff. Ex. I) at 14-17. Thomas received the highest interview score of 87.66, followed by Cornell at 87 and Plaintiff at 84.1. Although Cornell was not the highest scoring interview candidate, Forte selected her for the open position over Thomas. Fussy Aff. Exs. L, O. Shortly after selecting Cornell for the open fire investigator position, another fire investigator retired. Rather than repeat the early stages of the hiring process, the Fire Department, in consultation with the Union, decided to simply interview the next eligible candidate from the list drawn up by the Human Resources Department. Fussy Aff. Ex. U; Thornberg Dep. at 30. After William Lindberg was added as the third candidate to the list and was interviewed, Forte selected Thomas for the position, as he held the highest interview score of the three candidates. Fussy Aff. Exs. O, Q. Finally, in late 2003, a third position opened for fire investigator. Plaintiff, Lindberg, and Denise Bryn were interviewed for the position in November 2003. Fussy Aff. Exs. O, R. Bryn received the highest interview score, and was awarded the position by Forte. Id.

### III. DISCUSSION

A.      **Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion

for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      42 U.S.C. § 1983 Claims**

Plaintiff has advanced two claims in her Complaint, both predicated upon 42 U.S.C. § 1983. 42 U.S.C. § 1983 imposes "liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.'" Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 931 (1982)). Here, Plaintiff alleges Defendants retaliated against her for exercising her First Amendment rights to free speech and to free association. "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted). "The causal connection is generally a jury question, but it can provide a basis for summary judgment when the 'question is so free from doubt as to justify taking it from the jury.'" Id., quoting Ricketts v. Columbia, 36 F.3d 775, 779 (8th Cir. 1984).

**1.      First Amendment Claims Against Defendant Forte**

Here, there is no dispute that Plaintiff has satisfied the first element of a First

6

Amendment retaliation claim.  Plaintiff clearly participated, through her actions in the fall of 2002, in activities involving both free speech and free association.  Plaintiff, on many occasions as a Union leader, spoke publicly in opposition to Fire Department policies advanced by Forte.  It is well established that the First Amendment protects a public employee's right to speak on matters of public concern.  Connick v. Myers, 461 U.S. 138, 146 (1983).  Additionally, for purposes of this Motion, it will be assumed that Plaintiff has shown that the Fire Department took an adverse action against her by not selecting her as a fire investigator.  Thus, the analysis on whether Plaintiff has proffered sufficient evidence to survive Defendants' Motion will focus on whether the motivation to not select her was her speech and association activity.

A review of relevant case law demonstrates that the standard for demonstrating a causal connection between participation in First Amendment protected union activity and retaliatory conduct is high.  In Henderson v. Huecker, the Eighth Circuit found a causal connection only after documenting a factual pattern demonstrating egregious anti-union animus.  744 F.2d 640 (8th Cir. 1984).  In Henderson, the plaintiff's superiors commented that the plaintiff had negative feelings toward management and participated in "informal group activities," apparently referring to union activities.  Id. at 646.  Plaintiff's superiors also acknowledged that they did not appreciate her discussing her grievances with other employees.  Id.  Additionally, plaintiff's superiors were aware of her connection with a union, but because the defendant company did not recognize the union, refused to discuss her grievances with her.  Id.  Finally, the superiors objected to plaintiff publicly airing her grievances.  Id.  In contrast to Henderson, in Lunow v. City of Oklahoma City, the Tenth Circuit rejected a claim by five fire fighters who argued they were transferred based on their union activity.  61 Fed. Appx. 598 (10th Cir. 2003).  The Lunow

7

court found that the fire fighters could not demonstrate causation based on affidavits attesting to their belief that they were transferred because it was "an accepted fact" that union activity had been a detriment to their advancement. Id. at 604, 607, 611.

Here, beyond Plaintiff's bare allegations of anti-union animus against her, little evidence exists to demonstrate an anti-union bias against Plaintiff. Plaintiff's only direct evidence demonstrating Forte's alleged bias against her consists of him telling Thornberg that he needed to get his people under control, and then referencing Plaintiff.[3] Thornberg Decl. ¶ 6. This is insufficient evidence to demonstrate that Forte was biased against Plaintiff because of her Union activity. Moreover, the full context of the quotation is not given, so it can not be determined what precisely Forte was referring to. Additionally, there is no dispute that the fire investigator interviews were fairly conducted. None of the interviewers were aware of Plaintiff's Union activities. Clack Dep. at 342; Mila Dep. at 103; Seal Dep. at 161. Furthermore, neither of the Union representatives who attended the interviews raised any concerns about the fairness of the interviews. Thornberg Dep. at 18, 23-24; Griffin Dep. at 14-17. No grievance was filed about the process. Id. Finally, virtually all members of the Fire Department belong to the Union, including the successful candidates for fire investigator. Thornberg Dep. at 7. Therefore, it can not be argued that Plaintiff was passed over in favor of a non-union member.

Even if Plaintiff could demonstrate the existence of anti-union animus against her, she can not show that she otherwise would have received the position of fire investigator.

---

[3] Plaintiff also cites a conversation in which Battalion Chief Pete Malioski allegedly informed her that Forte stated that he did not like Fire Department employees speaking out against his proposal. Davison Decl. ¶ 5. However, Plaintiff can not rely on hearsay to avoid summary judgment. Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 923 (8th Cir. 2004). There is no affidavit from Malioski of record.

8

Henderson, 744 F.2d at 643 (if a plaintiff demonstrates that her participation in protected conduct was a motivating factor in the adverse employment action, the "burden then shifts to the employer to demonstrate by a preponderance of the evidence that they would have taken the same action even in the absence of the protected conduct"). Defendants argue that Forte's policy of choosing the top interviewing candidate for open positions establishes that, no matter whether he personally held any anti-union animus against Plaintiff, he would not have chosen her for the fire investigator position, as she was never the highest scorer among the interview group. Plaintiff contends that it has been shown that twice in his career Forte chose for promotion an individual who was not the highest scoring interviewee, her allegation that Forte maintained anti-union animus against her can not be discounted. One of the situations, however, occurred several years ago when Forte chose a candidate ranked 24 over a candidate ranked 23 for one of 23 positions. The other, which occurred with the first selection of a fire investigator, involved choosing a person who scored just a few tenths of a point lower than the highest interviewee. Neither incident suggests that Forte significantly varied his usual practice of choosing the highest scoring candidate for open positions. Combined with the lack of evidence of anti-union animus on the part of Forte, Plaintiff has failed to present sufficient evidence to support her First Amendment retaliation claims.

    **2. First Amendment Claims Against Defendant City of Minneapolis**

As to Defendant City of Minneapolis, Plaintiff brings a Monell claim based on the same allegations brought against Forte. As a general matter, municipalities are not subject to respondeat superior or vicarious liability under § 1983. Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 694 (1978). However, a municipality can be held liable

for its own wrongs when the enforcement of a policy or practice of the municipality results in the deprivation of federally protected rights. Id. at 694. To demonstrate Minneapolis' liability under a Monell claim, the Plaintiff must show that a policy or custom of Minneapolis was the "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citation omitted). Additionally, "[a]n unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business." Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992).

Here, the record does not reveal any policies or customs of Minneapolis that can be considered unconstitutional. Additionally, while Forte may have retained authority to make personnel decisions, it is not clear that he has the authority to bind the city as the final decision maker for setting policy. Bechtel v. City of Belton, 250 F.3d 1157, 1161 (8th Cir. 2001) (holding that a fire department chief in charge of personnel was not the final authority on policy). On these grounds, as well as those set forth previously, Plaintiff's Monell claim must also fail.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants City of Minneapolis and Rocco Forte's Motion for Summary Judgment [Docket No. 18] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


       s/Ann D. Montgomery       
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: April 13, 2006.